# PLAINTIFF'S EXHIBIT I

Page 1

1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                     EASTERN DIVISION
3        LATHIERIAL BOYD,              )
                                       )
4                 Plaintiff,           )
                                       )
5           vs.                        )  Case No. 13 C 7152
                                       )
6        CITY OF CHICAGO, CHICAGO      )
         POLICE OFFICER RICHARD        )
7        ZULEY, star no. 15185;        )
         CHICAGO POLICE OFFICER        )
8        LAWRENCE THEZAN, star         )
         no. 9419, CHICAGO POLICE      )
9        OFFICER STEVE SCHORSCH,       )
         star no. 8955; CHICAGO        )
10       POLICE OFFICER JOHN           )
         MURRAY, star no. 3175;        )
11       CHICAGO POLICE OFFICER        )
         WAYNE JOHNSON, star no.       )
12       4266; and RAY KAMINSKI,       )
         as special                    )
13       representative of the         )
         Estate of former CHICAGO      )
14       POLICE OFFICER ANDREW         )
         SOBOLEWSKI,                   )
15                                     )
                  Defendants.          )
16
17            The deposition of SHELLEY KEANE, called for
         examination pursuant to the Rules of Civil Procedure
18       for the United States District Courts pertaining to
         the taking of depositions, taken before
19       JENNIFER M. DALY, a certified shorthand reporter
         within and for the County of Cook and State of
20       Illinois, at 77 West Wacker Drive, Suite 3100,
         Chicago, Illinois, on the 15th day of December,
21       2015, at the hour of 10:10 a.m.
22
23       REPORTED BY:  JENNIFER M. DALY, RPR, CSR
24       LICENSE NO.:   084-004688

Page 123

1        Q.    Did you attempt to interview

2   Steve Schorsch?

3        A.    No.

4        Q.    Did you attempt to interview

5   Ralph Sikorski?

6        A.    No.

7        Q.    Did you attempt to interview

8   John Murray?

9        A.    No.

10       Q.    Did you attempt to interview

11  Wayne Johnson?

12       A.    No.

13       Q.    Did you attempt to interview Dick Zuley?

14       A.    Yes.

15       Q.    Tell us about that.

16       A.    I asked the investigators to attempt to

17  get a number for him or a location, and they were

18  able to get me a phone number.  I called the number

19  and left a message with him to call me back.  I

20  never received a response.

21          I asked the investigators to go to -- I

22  believe he was working at the Department of Aviation

23  at the time, if they could go meet with him, explain

24  what was going on, if he would be willing to speak

1    with me.  He did not want to speak with me.

2         Q.    You asked your investigators to explain

3    to Detective Zuley what was going on?

4         A.    Just that it was about -- in regards to

5    the Lathierial Boyd case, and that I wanted to talk

6    to him from the Conviction Integrity Unit.

7         Q.    And do you know if they delivered that

8    message to Detective Zuley?

9         A.    Specifically what words were said by the

10   investigators to Detective Zuley, I do not know

11   that.

12        Q.    Did you ever personally yourself speak

13   to Detective Zuley?

14        A.    No.

15        Q.    In 2008, Mr. Boyd filed a petition for

16   writ of habeas corpus in federal court, Cook County

17   State's Attorney's Office again defended the matter

18   and the underlying conviction.

19              Did you or the Integrity Unit review the

20   briefs filed in relation to that petition?

21        A.    I don't recall reviewing the briefs on

22   that, but I can't say for sure.

23        Q.    Boyd appealed that denial -- strike

24   that.

Page 142

1            MR. NOLAND:  Excuse me, I believe she

2       was --

3   BY MS. ZELLNER:

4       Q.    -- victim --

5            MR. NOLAND:  -- answering still, and

6       you cut her off.

7            MS. ZELLNER:  Well, I think her

8       attorney can make that kind of objection.

9   BY MS. ZELLNER:

10      Q.    Please, go ahead.

11           MS. MEADOR:  Were you done?  As long

12      as you're not talking about weight and

13      credibility determination that you made --

14           THE WITNESS:  Right.  Yeah.

15           MS. MEADOR:  Okay.

16  BY MS. ZELLNER:

17      Q.    So what was your answer -- you said

18  Ricky Warner -- everyone knew Ricky Warner was a

19  quadriplegic, correct?

20      A.    Right.

21           MS. MEADOR:  Objection; speculation.

22  BY MS. ZELLNER:

23      Q.    Did you know Ricky Warner was a

24  quadriplegic before his death?

Page 143

1        A.    Yes.

2        Q.    Did you know that quadriplegics cannot

3    sign or move their arms, can't move their arms?

4        A.    Yes.

5        Q.    Okay.  So when Detective Thezan told you

6    that Ricky Warner had signed a photo array, did

7    that -- was that consistent with what you knew

8    Ricky Warner's condition to be?

9        A.    No.

10       Q.    And anywhere in all of your review of

11   the prior witness interviews, had Detective Thezan

12   ever made that statement to anyone else, as far as

13   you know?

14       A.    No.

15       Q.    You were not the -- as you've stated

16   previously, you were not the ultimate decision-maker

17   in this case about whether Lathierial Boyd's

18   conviction would be vacated, correct?

19       A.    Correct.

20       Q.    And you were not the ultimate

21   decision-maker on whether the State's Attorney would

22   oppose a petition for a certificate of innocence,

23   correct?

24       A.    Correct.