# PLAINTIFF'S EXHIBIT K

```
 1            IN THE CIRCUIT COURT OF COOK JUDICIAL CIRCUIT

 2                       COOK COUNTY, ILLINOIS

 3     PEOPLE OF THE STATE OF ) Criminal Division
       ILLINOIS,              )
 4            Plaintiffs,     )
                              )
 5           -vs-             )  90-C-R-8602
                              )
 6     LATHIERIAL BOYD,       )
              Defendant.      )
 7

 8              RECORD OF PROCEEDINGS had in the

 9     hearing of the above-entitled cause before the

10     Honorable SHELVIN SINGER, Judge of said court

11     on the 23rd day of October, A. D. 1990.

12     PRESENT:
              MR. CECIL A. PARTEE,
13              State's Attorney for Cook County, by
           MS. LORI LEVIN, and
14         MR. JAMES BAILEY,
              Assistant State's Attorneys,
15            on behalf of the People of the
              State of Illinois;
16
           MR. EMORY ANDREW TATE,
17            on behalf of the Defendant.

18

19

20

21     ROCHINA V. CHOLEWA
       Official Court Reporter
22     Criminal Division

23

24
                              230
```

```
 1        THE CLERK:  People of the State of Illinois
 2   versus Lathierial Boyd.
 3        THE COURT:   The record should reflect the
 4   defendant is present in his own person and that
 5   of his counsel and the State is present through
 6   its counsel.
 7             State ready to proceed?
 8        MS. LEVIN:   Yes.
 9        MR. TATE:    Defense ready.
10        THE COURT:   Call your next witness.
11        MS. LEVIN:   People call Detective Richard
12   Zuley.
13        MR. TATE:    Motion to exclude.
14        THE COURT:   Motion to exclude witnesses
15   still in force and I will ask both sides to
16   police their own witnesses.
17
18     D E T E C T I V E   R I C H A R D   Z U L E Y,
19
20   called as a witness by the State's Attorney
21   herein, having been first duly sworn, was
22   examined and testified as follows:
23
24
```

```
 1    Michael Fleming, one Ricky Warner, one Boris
 2    Kabarov (phonetic), one David Lofton and one
 3    Richard Ketchek?
 4         A.    Yes, ma'am, I was.
 5         Q.    With respect to this investigation did
 6    you have occasion to go on March 7th or March
 7    8th, 1990 to the Intensive Care Unit of the
 8    Spinal Care Section of Northwestern University
 9    Hospital?
10         A.    Yes.
11         MR. TATE:   Objecting unless a specific date
12    was mentioned.
13                     She mentioned two dates.
14         THE COURT:   Two dates you mentioned.  I
15    will sustain.
16    BY MS. LEVIN:
17         Q.    Sir, do you recall if it was the 7th or
18    8th of March, 1990 that you went to the Spinal
19    Care Unit of Northwestern Hospital?
20         MR. TATE:   Withdraw objection.
21         THE WITNESS:    One of the dates.
22         MR. TATE:   Ojection and moving to strike his
23    answer as one of those days not being
24    sufficient.
```

233

SAO 04933

1  THE COURT: At this juncture I will overrule.
2  BY MS. LEVIN:
3  Q. Do you recall approximately what time
4  you went to the Intensive Care Unit of the
5  Spinal Care Unit of Northwestern University
6  Hospital?
7  A. Approximately 6:00 in the evening,
8  6:30.
9  Q. Is this in Chicago, Cook County,
10 Illinois?
11 A. Yes.
12 Q. Who did you see when you got to that
13 location?
14 A. I was there to interview Ricky Warner.
15 Q. During the course of that did you have
16 occasion to show him some photos?
17 A. Yes.
18 Q. How did you show him the photos?
19 A. Because he didn't -- couldn't hold the
20 photos himself or move his hands --
21 MR. TATE: Objecting.
22 Moving to strike that answer.
23 THE COURT: I think it is not responsive
24 but I am not sustaining it based on nonrespon-

234

SAO 04934

1    A.    The gentleman sitting to the right of
2    counsel; Mr. Boyd, wearing the pink shirt.
3        MS. LEVIN:    The record reflect the in-court
4    identification of the defendant, Lathierial
5    Boyd.
6        THE COURT:    Record so reflect.
7        MS. LEVIN:    One moment, please?
8    BY MS. LEVIN:
9    Q.    Did you inventory People's Group
10   Exhibit No. 19?
11   A.    That is the Polaroid photos?
12   Q.    Yes?
13   A.    Yes, I did.
14   Q.    Did you take them out of inventory
15   prior to the case starting and give them to
16   myself?
17   A.    Yes.
18   Q.    Sir, I show you what has been pre-
19   viously marked as People's Exhibit No. 20 for
20   Identification.
21        Do you recognize this?
22   A.    Yes, ma'am, I do.
23   Q.    What is this?
24   A.    A small note pad, paper from Federal

SAO 04945

```
 1    Express.
 2         Q.    Have you ever seen it before?
 3         A.    Yes.
 4         Q.    When did you see it before?
 5         THE COURT:    That is No. 20 now?
 6         MS. LEVIN:    Yes, sir.
 7         THE WITNESS:   I saw it at Northwestern
       Hospital where I recovered it from the Spinal
       Care Unit.
10              I was told that it was given to
       them by Ricky Warner.
12         MR. TATE:  Objection to what he was told.
13         THE COURT:  Sustained.
14         MS. LEVIN:  This is not offered for the
       truth of the matter asserted.
16              It explains what he next did with
       it.
18         THE COURT:  I am not going to consider this
       in any chain.
20         MS. LEVIN:  That is fine.
21         THE COURT:  I will let it in for that limited
       purpose.
23         THE WITNESS:  After it was given to me I
       took it in to Mr. Warner's room and asked Ricky
```

```
1          THE COURT:   Overruled.
2          THE WITNESS:  May I answer?
3          THE COURT:   Yes.
4          THE WITNESS:   Mr. Boyd had told me that
5    Ricky Warner was confusing him with his cousin,
6    Kerry Kelly, and he told me the two of them bore
7    a very striking resemblance to one another.
8               I picked up the photograph of Mr.
9    Kelly, had a photograph taken, saw they did not
10   show a striking resemblance and had a photograph
11   taken to show there was no mistaken identifi-
12   cation
13   BY MR. TATE:
14       Q    Mr. Warner didn't have any difficulty
15   with the photographs on the first time you
16   showed him?
17       A    Not at all
18       Q    He didn't have any difficulty the
19   second time?
20       A    Absolutely none
21       Q    Did you mention the defendant's names
22   to Ricky Warner at the time you showed him
23   photographs?
24       A    I asked him if he could pick out Rat,
```

1   Q.   You did mention Rat?
2   A.   Yes, sir, I did.
3   Q.   When did you first become acquainted
4   with the nickname Rat in terms of date and time?
5   A.   My initial involvement in the investi-
6   gation was in trying to identify Rat --
7   Q.   No; when?
8   A    I don't know the date. A week,
9   probably earlier
10  Q.   A week before you showed him the
11  photographs?
12  A    Yes.
13  Q    Which photographs -- Now, sir, you are
14  asking about the 12th or are you talking about
15  the 7th or 8th?
16  A.   The 7th or 8th.
17       It wasn't a week before then, no.
18  Q.   At the time you showed the photographs
19  to him on the 8th you were aware of the nickname.
20  Rat?
21  A    Yes, sir
22       I had identified Rat and that is
23  what I was doing over there at that point.
24  Q.   When you showed those photographs to

261