# PLAINTIFF'S EXHIBIT S

```
          IN THE CIRCUIT COURT OF COOK COUNTY
            COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE           )
STATE OF ILLINOIS,          )
                            )
            Plaintiff,      )
                            )   Case No.    90-8602
      -vs-                  )
                            )   Charge:     Murder
LATHIERIAL BOYD,            )
                            )
            Defendant.      )
```

### BENCH TRIAL

REPORT OF PROCEEDINGS had in the above-entitled cause, before the HON. SHELVIN SINGER, Judge of said Court, on the 16th day of October, A.D., 1990.

APPEARANCES:

    HON. CECIL A. PARTEE,
        Acting State's Attorney of Cook County, by:
    MS. LORI LEVIN, and
    MR. JAMES BAILEY,
        Assistant State's Attorneys,
        Appeared for the Plaintiff;

    MR. EMORY TATE,
        Appeared for the Defendant.

SAO 04860

```
 1                    RICKY WARNER,
 2   called as a witness on behalf of the State, having
 3   been first duly sworn, was examined and testified
 4   as follows:
 5                    DIRECT EXAMINATION
 6                          BY
 7                    MS. LEVIN:
 8       MS. LEVIN:  May I proceed, Your Honor?
 9       THE COURT:  Please.
10       MR. TATE:   Motion to exclude.
11       THE COURT:  All right, there is an on-going
12   motion to exclude witnesses made.
13            Now, is there anybody in here who is a
14   witness?
15       MS. LEVIN:  Judge, there are two people who are
16   witnesses and they have already testified, and we
17   are not anticipating recalling them.
18       MR. TATE:   And what are their names, please?
19       MS. LEVIN:  Mr. Warner and Miss Fleming.
20       MR. TATE:   There is an outside possibility that
21   I may call them at some point if it is necessary,
22   so I would ask they be excluded.
23       MS. LEVIN:  Judge, I --
24       THE COURT:  Which one?
```

162

SAO 04862

1  Q. (Continuing by Ms. Levin) After  were
2  shot, what did you see the Defendant do?
3  A. He ran.
4  Q. Where did he run?
5  A. Across the street. Across the street.
6  Q. Then what happened?
7  A. He jumped in a car.
8  Q. Do you remember what kind of a car?
9  A. I think it was -- I think it was white.
10 MR. TATE: May I see that?
11 MS. LEVIN: I am sorry. I thought you had seen
12 this before.
13 Did you have any guns on you that day?
14 THE WITNESS: No. No. I never carry. No. I
15 never carry.
16 MR. TATE: Move to strike the last part of the
17 answer.
18 THE WITNESS: No.
19 THE COURT: Overruled.
20 Q. (Continuing by Ms. Levin) Did you in any
21 way threaten the Defendant?
22 A. No.
23 Q. Did you say anything to him before he shot
24 you?

```
 1    she wants to leave at 3:00.
 2         THE COURT:  All right.  Back on the record.
 3         Counsel, proceed.
 4         Are you ready?
 5    Q    (Continuing by Mr. Tate)  Besides Ricky,
 6    besides the light that you mentioned at the parking
 7    entrance, were there any other lights that you
 8    observed?
 9    A    Yes, sir.  The parking sign.  That's where
10    I was.
11    Q    You were near the parking sign?
12    A    Yes, sir.
13    Q    How near were you to the parking sign?
14    A    Pretty close.  Pretty close.
15    Q    Ten feet?
16    A    I can't really tell.  I was pretty close.
17    Q    Besides your cousin, Mike Fleming, were
18    there anyone else on the street that you saw just
19    before you were shot?
20    A    Three other guys.  Three other guys.
21    Q    Were these guys White or Black?
22    A    White.  White.  They was White, sir.
23    Q    And were you talking to these three other
24    guys?
```

195

37

SAO 04895

1   Q   And did you go in?
2   A   No, I didn't 'cause he couldn't get in.
3   Q   What time was this that he couldn't get in?
4   A   It was about 11:00, 12:00. Or 12:00.
5   Q   What time was it when you saw Rat shoot you?
6   A   2:00 o'clock maybe. I don't remember the
7   precise time, sir.
8   Q   Did you have any marijuana in your posses-
9   sion that night, that morning?
10  A   No.
11  Q   Did you have any white powder in your posses-
12  sion that morning?
13  A   No.
14  Q   Did Mike Fleming have any white powder in his
15  possession that morning?
16      MS. LEVIN: Objection.
17      THE WITNESS: I don't remember.
18      THE COURT: Overruled.
19      THE WITNESS: I don't remember.
20  Q   (Continuing by Mr. Tate) Well, that night
21  at 10:00 o'clock on Fulton and Kedzie, had you and
22  Mike mixed up some white powder at that address?
23  A   No, sir.
24  Q   You had not?

193

SAO 04898

A.   No, sir.

Q.   Well, you were -- you were at that address, weren't you?

A.   Yes, sir.

Q.   And was that -- were you also in the presence of Charise Parker, Mike's girlfriend?

A.   Yes. It's my auntie house.

Q.   Was that 3251 West Fulton?

A.   Yes, sir.

Q.   And you and Mike had been watching television, is that right?

A.   Yes, sir.

Q.   And after watching television a while, you started mixing up some -- pounding some pills into a white powder, didn't you?

MS. LEVIN:   Objection.

THE COURT:   Sustained.

Counsel, this is outside the scope.

MR. TATE:   I can connect it up, Your Honor.

THE COURT:   How are you going to connect it up?

MR. TATE:   Because it could be the fake marijuana or fake cocaine that is already in the record.

THE COURT:   I didn't hear anything about fake cocaine; all I heard was about fake marijuana and I

199

SAO 04899

1  don't see how the white powder or the marijuana --

2  THE WITNESS: Me neither.

3  THE COURT: So I will sustain the objection.

4  Proceed.

5  Q  (Continuing by Mr. Tate) Ricky, you had

6  gotten into some trouble with three Black men for

7  selling them fake cocaine, hadn't you?

8  A  No, sir.

9  MS. LEVIN: Objection.

10  THE COURT: Sustained.

11  MR. TATE: Just before this incident?

12  THE WITNESS: No, sir.

13  Q  (Continuing by Mr. Tate) These men hadn't

14  threatened you to hurt you because of fake cocaine?

15  MS. LEVIN: Objection.

16  THE WITNESS: No, sir.

17  THE COURT: Sustain the objection.

18  Q  (Continuing by Mr. Tate) Now, while you were

19  there trying to sell marijuana -- strike that.

20  How long had you been using that location to

21  sell marijuana?

22  MS. LEVIN: Objection.

23  THE COURT: Overruled.

24  Q  (Continuing by Mr. Tate) How long?

200

```
1   answer. Please do not volunteer the answers; just answer
2   the question. If there's an objection, wait until you
3   hear a ruling from me. If I overrule the objection, then
4   you can answer. If I sustain the objection, then you
5   are not to answer.
6        MR. TATE: With the Court's indulgence.
7        THE COURT: Yes, sir.
8    Q   (Continuing by Mr. Tate) Ricky?
9    A   Yes, sir.
10   Q   I show you again People's Exhibit Number 20,
11  this piece of paper, and ask you, what date did you
12  first see this piece of paper?
13   A   The date he gave me.
14   Q   Yes. What date was that?
15   A   I don't remember the date, sir.
16   Q   Do you remember the month?
17   A   I don't remember the month.
18   Q   Do you remember the year?
19   A   Yes, sir.
20   Q   What year was it?
21   A   1990.
22   Q   Was it in the summertime or the wintertime?
23   A   Summertime.
24   Q   Was it in July, 1990?
```

44

202

SAO 04902

1   A.   I don't remember.

2   Q.   Was it in May, 1990?

3   A.   Sir, I told you I don't remember. I know he
4   gave it to me when he was in his car.

5   Q.   Do you remember where it was that he gave it
6   to you?

7   A.   Yes.

8   Q.   Where?

9   A.   In back of his cousin house.

10  Q.   And what address is that, if you can remember.

11  A.   It's on -- it's on 15th and St. Charles, sir.

12  Q.   And who was present at the time he gave it
13  to you?

14  A.   His friend.

15  Q.   Anyone else present besides his friend?

16  A.   No, there wasn't.

17  Q.   Do you remember the day of the week that he
18  gave it to you?

19  A.   Yes.

20  Q.   What day of week was it?

21  A.   Day of week?

22       Was it Monday, Tuesday; or what day was it?

23  A.   I don't remember the day, sir.

24  Q.   Do you remember anyone else being present

45

203

1  at the time he gave it to you?

2  A. No, sir.

3  Q. What did he do? He just shoved this at you?

4  Did he say anything to you?

5  A. I'm going to tell you, sir. He wrote the

6  amounts down there.

7  Q. What did he say as he gave it to you?

8  MS. LEVIN: Objection.

9  THE COURT: Sustained. Let the witness finish

10  the answer.

11  Please proceed with the answer.

12  THE WITNESS: The amount and the money, yes, sir.

13  It's down there. His friend named Reggie, I met him.

14  Q. (Continuing by Mr. Tate) Do you know who

15  wrote this?

16  A. Rat.

17  Q. Did you see him write this out?

18  A. Sir, I was standing right by the car. I

19  couldn't do nothing but see it.

20  Q. You said you owed Rat some money?

21  A. Yes.

22  THE COURT: You have to repeat the answer. I am

23  sorry, Miss Reporter. Please read the question to the

24  witness.

204

SAO 04904

A. Yes, sir. He -- I seen him run up on me and I turned around and looked.

Q. Was that before the shot or after?

A. It was before the shots, sir. That's when he shot me and left me for dead. I'm paralyzed but I ain't dead, sir.

Q. At the time you saw Mr. Boyd, was he wearing a hat?

A. No, sir. I don't recall wearing a hat.

Q. Was he wearing an overcoat?

A. I don't think so. Yes, sir. I think so.

Q. He was wearing an overcoat?

A. I don't remember. I don't really remember what he had on. I really don't remember what I had on, sir.

MR. BAILEY: Judge, I think he is confused. I think he is asking him --

THE COURT: Counsel, Counsel, I understand. If there's an objection, object.

MS. LEVIN: Object.

THE COURT: I don't know what you're objecting to now.

Proceed.

MR. TATE: Thank you. With the Court's indulgence?

213

1    MR. BAILEY: Judge, I apologize. The machine is a
2  little loud and I have trouble hearing you sometimes.
3    THE COURT: I will shout it out.
4    MR. BAILEY: Thank you, Judge.
5    Q    (Continuing by Mr. Tate) When you say the
6  Defendant Rat jumped into a car, did you see him jump
7  into a car?
8    A    No, sir.
9    Q    You don't know if he got into a car or not,
10 do you, sir?
11   A    Yeah, I know. It was like a white car.
12   Q    You saw him get into a white car?
13   A    Yes. A white car, sir.
14   Q    After you were shot?
15   A    I didn't black out, sir. I seen him run
16 off and I looked and seen the car. White. I think
17 the car was white, sir.
18   Q    Did you talk to anybody from the State's
19 Attorney's Office today before you testified?
20   A    No, sir. What? Yes.
21   Q    You did talk with the State's Attorney
22 today before you started testifying?
23   A    No, sir. I didn't talk to 'em.
24   Q    Before today do you recall talking with the

215

SAO 04915

State's Attorney?

A. One time, sir, yes.

Q. When was that that you can recall?

A. A couple of weeks. I think so, sir; a couple of weeks ago. Couple weeks.

Q. And do you see that person you talked to in the courtroom?

A. Yes.

Q. Would you point her out for the record?

A. She is wearing red, sir.

MS. LEVIN: Judge, I guess he made an identification of me.

THE COURT: For the record, Miss Levin.

Q. (Continuing by Mr. Tate) Before that time had you talked with her?

A. Yes.

Q. When was that, if you can recall?

A. I don't remember.

Q. Now, on March 9th, 1990, when you were talking with Detective Zabelewski, did you tell him to go and talk to your father, Mr. Warner?

A. Yes, I did.

Q. Did you tell him that your father would help find the man that shot you?

216

5

SAO 04916

1   A.   No.

2   Q    What did you tell him?

3   A.   I told him Rat shot me. That's what I told
4   him. I told him the guy shot me.

5   Q    Had you also told him that you didn't know
6   who shot you that day?

7   A.   No.

8   THE COURT: Counsel, that has been asked and
9   answered. I really -- I'm trying to go as long as
10  I can, but please, once a question has been asked and
11  answered, that's the end of it.

12  MR. TATE: Well, Your Honor, I was simply trying
13  to establish the continuity.

14  THE COURT: Well, you should have established
15  the continuity when you asked him that question and
16  it was answered. You should have gone on to say that
17  which -- the precursor of the question that comes
18  after that foundation.

19  MR. TATE: Very well, Your Honor.

20  THE COURT: Proceed.

21  Q    (Continuing by Mr. Tate) Now, you testified,
22  Mr. Warner, that you heard shots at the time you were
23  shot. How many shots did you hear?

24  MS. LEVIN: Objection. That was not his testimony.

217

SAO 04917

1   THE WITNESS: I heard shots before.
2   MS. LEVIN: Thank you.
3   THE COURT: Sustain the objection.
4   THE WITNESS: Yes. That was before I got shot,
5   sir.
6   Q   (Continuing by Mr. Tate) You heard shots
7   before you got shot?
8   A   Yes, sir.
9   THE COURT: Counsel, this is about the fourth time
10  you have asked that question. Please.
11  THE WITNESS: Yes, tell me. Tell me, please.
12  THE COURT: Please, Counsel.
13  THE WITNESS: Yes, please. Please.
14  THE COURT: Wait a minute, Mr. Warner. I am very
15  patient, but you can't go over the same territory
16  again and again.
17  MR. TATE: All right, Your Honor. I withdraw
18  the question.
19  THE COURT: It has been answered.
20  Q   (Continuing by Mr. Tate) Now, before you
21  were shot, Mr. Warner--
22  A   Yes, sir.
23  Q   -- were you thrown out of the Wild Hair
24  Tavern on Clark Street?

218

SAO 04918

1   MS. LEVIN: Objection.

2   THE COURT: Overruled.

3   THE WITNESS: No, I wasn't.

4   Q   (Continuing by Mr. Tate) Didn't the manager of the Wild Hair Tavern tell you that you were selling fake cocaine and that you couldn't come in there any more?

8   MS. LEVIN: Objection.

9   THE COURT: Sustained.

10  THE WITNESS: No.

11  THE COURT: Sustain the objection.

12  Q   (Continuing by Mr. Tate) Were you made aware that some of your customers were out to hurt you because of the fake cocaine?

15  MS. LEVIN: Objection.

16      Judge, I don't --

17  THE COURT: Sustained.

18  THE WITNESS: No, sir.

19  THE COURT: The objection was sustained.

20  MR. BAILEY: When the Judge says "sustained," --

21  THE COURT: The objection was sustained.

22      Mr. Bailey, your sole purpose is to hold that microphone --

24  MR. BAILEY: Thank you, Judge.

61

SAO 04919